[No. 1574.]

Andrew Ruston *v.* The State.

1. Habeas Corpus.—Right of Bail.—Evidence held insufficient to support the judgment of the court below in refusing bail.
2. Same.—The record, in *habeas corpus* cases on appeal, should always disclose the pecuniary circumstances of the accused, as a guide to fix the amount of bail, if the case be held bailable.

Appeal from the District Court of Medina. Tried below before the Hon. T. M. Paschal.

The appeal in this case is prosecuted from an order in chambers issued by the Hon. T. M. Paschal, judge of the twenty-fourth judicial district, denying bail to the appellant, who was held in custody by the sheriff of Medina county upon a charge of rape.

Bail was refused in this case upon the testimony of Sallie Bartlett, the step-daughter of the accused, and the alleged injured party. Without going into her testimony circumstantially, it is sufficient for the purposes of this report to say that she testified that she was fifteen years of age, and had been an inmate of applicant's household since his marriage to her mother, some twelve or thirteen years before the alleged outrage. She had been reared to respect his authority, and, save and except this one assault upon her person, he had always treated her with great circumspection. On the night of September 29, 1883, while her mother was asleep, in the same room in which she and her two younger sisters occupied a pallet on the floor, the applicant came to her and required her to drink three teacups full of whisky, one after the other. The witness at first refused to drink the liquor, but finally did drink it, being afraid that if she persisted in refusing, the applicant would whip her. Having drank the liquor and lost in a large measure the use of her limbs and power of resistance, the applicant took her and carried her out of the house to a cotton bale near by, on which he placed her, and despite her efforts at resistance, raised her clothes and had carnal knowledge of her person. He penetrated her person. This connection was had without the consent of the witness, and when she was so far overcome by the whisky he had administered that she was rendered incapable of effectual resistance.

She made several attempts at outcry, but each time the applicant placed his hand over her mouth. When he had accomplished his purpose and rearranged her clothes, the applicant picked up a chunk and asked her if she was going to report the occurrence. She replied that she did not know, whereupon the applicant warned her, threateningly, that she had better not.

Witness told her mother (since dead) of the occurrence some three or four months prior to this proceeding. She told her aunt Mrs. Graves, some two or three months before. She would have told it sooner but was afraid. She did not tell them who impregnated her, for she did not know. She was apprised of her pregnancy by the cessation of her menses. The defendant brought the whisky to the house that evening in a quart-bottle. Witness did the work about the house as usual, next morning. Witness's mother died on Monday night, October 1, 1883. Witness and the younger children went home with their aunt, Mrs. Graves, where they had since lived. In some respects the testimony of this witness was self-contradictory.

William Herring testified that at no time during 1883 did the defendant speak to him of having had carnal intercourse with the prosecuting witness, Sallie Bartlett. Witness did not tell Charlie Hattox that the defendant, in the course of a conversation with him, on one occasion, said that he "was going to have some from that girl," referring to Sallie Bartlett. He did tell Hattox that defendant said that he "was going to get some," and he, witness, thought he had reference to the said Sallie.

Certain witnesses testified that about the time of the death of the wife of the applicant, the applicant gave them a drink of whisky from an ordinary beer bottle which did not hold a quart. Others testified that the applicant's treatment of the prosecuting witness was always kind and considerate; that he sent her to school and often expressed a desire to educate her. None of the witnesses who testified impeached Sallie's character for chastity, though some had heard some talk about her, and warned her step-father to guard her against imprudences.

Doctor Evans testified that he had known the prosecuting witness since September, 1883. His attention was then incidentally called to her condition. She was suffering from suppression of the menses, and, though he made no critical examination of her, his impression at that time—September, 1883—was that she was pregnant. He made an examination on the day

before this trial, and it was his confirmed opinion that she was about four months advanced in pregnancy.

*John C. Sullivan*, for the applicant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE.   1.   Without reciting or commenting upon the evidence in this case, suffice it to say that in our opinion it is not of that satisfactory, evident and conclusive character which is required to authorize the denial of bail. (*Tapolanck v. The State*, 40 Texas, 160; *Goss v. The State*, 40 Texas, 520; *Rogers v. The State*, 1 Texas Ct. App., 187; Bill of Rights, sec. 11.)

2.   There is no evidence in the record which directly informs us as to the capacity and ability of the applicant to give bail. We are without any proper guide by which to determine a reasonable amount of bail, with reference to the applicant's pecuniary circumstances.   We gather from the record, circumstantially, however, that applicant is a poor man, and, in fixing the the amount of his bail, we shall be governed by the rules prescribed in Article 296 of the Code of Criminal Procedure, in so far as we are enabled to do so by the record before us.   In cases of this character, the record should always furnish us with information as to the pecuniary circumstances of the accused. (*Miller v. The State*, 42 Texas, 309; *Ex Parte Walker and Black*, 3 Texas Ct. App., 668.)

3.   We hold that the applicant is entitled to bail, and we order that the judgment of the court below refusing him bail be reversed, and that he be and is now admitted to bail in the sum of five hundred dollars, that amount, in our opinion, being reasonable under the evidence as presented to us in the record.

*Reversed, and bail allowed.*